1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                           ----oo0oo----

11

12   JEREMIAH PEARSON, individually        No. 2:25-cv-01270 WBS SCR
     and on behalf of all others
13   similarly situated,

14            Plaintiff,                    MEMORANDUM AND ORDER RE:
                                            DEFENDANT MONDELEZ GLOBAL
15       v.                                 LLC'S MOTION TO STAY OR
                                            TRANSFER VENUE
16   MONDELEZ GLOBAL LLC,

17            Defendant.

18

19                           ----oo0oo----

20            Plaintiff Jeremiah Pearson brought this putative class

21   action against defendant Mondelez Global LLC, claiming consumer

22   protection and contract law violations in connection with an

23   allegedly deceptive label on defendant's product.  (See Compl.

24   (Docket No. 1) ¶¶ 1-5.)  Defendant now moves to stay under the

25   first-to-file rule on the grounds that plaintiff's action mirrors

26   another consolidated class action currently pending in the

27   Northern District of Illinois.  (See Docket No. 9 at 1-2.)

28

                                    1

1    Defendant requests in the alternative to transfer venue pursuant
2    to 28 U.S.C. § 1404(a).  (See id.)
3    I.   Factual and Procedural Background
4             Defendant is a subsidiary of Mondelez International,
5    Inc. ("MII"), one of the largest snack food and chocolate
6    companies in the world.  (See Docket No. 9-8 ¶ 1.)  One of MII's
7    products is OREO cookies, which defendant is "responsible for
8    manufacturing, distributing, and marketing" within the United
9    States.  (Docket No. 9 at 8.)
10            A label on OREO products states the cookies are made
11   with "100% Sustainably Sourced Cocoa."  (Compl. ¶¶ 1-2.)  The
12   label is accompanied by defendant's "Cocoa Life" logo, which
13   refers to their "global cocoa 'sustainability' program, designed
14   to 'make cocoa right'" by attempting to mitigate the humanitarian
15   and environmental harms wrought by the cocoa industry.  (Id. ¶¶
16   17-18.)
17            Plaintiff alleges this label is false, because
18   "[d]efendant uses an accounting method called 'mass balance,'"
19   which "allows [d]efendant to mix cocoa beans from Cocoa Life
20   farms with non-certified cocoa beans from other farms."  (Id. ¶¶
21   19-20.)  Such allegedly mixed sourcing results in cookies with an
22   "uncertain composition."  (Id. ¶ 7.)
23            This class action was preceded by two others with which
24   it shares a factual background.  (See Docket No. 9-2 ¶¶ 2-3.)
25   The first was filed in the Northern District of California by
26   Megan Waggener against MII, the second in the Northern District
27   of Illinois by Tim Gollogly, also against MII.  (See id. ¶¶ 2-3.)
28   Judge Martínez-Olguín of the Northern District of California

1  granted MII's request to transfer the Waggener action to the

2  Northern District of Illinois, and thereafter the cases were

3  consolidated. (See Docket No. 9 at 4.)

4        The consolidated class action complaint ("the Waggener

5  complaint") also claims the OREO label is false. (See Docket No.

6  9-8 ¶ 4.) The Waggener complaint -- like plaintiff's -- takes

7  issue with mixed cocoa sourcing, but Waggener's primary grievance

8  appears to be with the unethical consequences of that practice

9  rather than the resulting uncertainty in product composition.

10 (See Docket No. 9-8 ¶ 4.)

11 II.  Legal Standard

12       The first-to-file rule is "a judicially created

13 doctrine of federal comity, which applies when two cases

14 involving substantially similar issues and parties have been

15 filed in different districts." In re Bozic, 888 F.3d 1048, 1051

16 (9th Cir. 2018) (internal quotation marks and citations omitted).

17 "Under that rule, the second district court has the discretion to

18 transfer, stay, or dismiss the second case in the interest of

19 efficiency and judicial economy." Id. at 1051-52 (internal

20 quotation marks and citation omitted).

21       To determine whether to apply the rule, a district

22 court considers three factors: "chronology of the lawsuits,

23 similarity of the parties, and similarity of the issues." Kohn

24 Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc., 787 F.3d 1237,

25 1240 (9th Cir. 2015). "When applying the first-to-file rule,

26 courts should be driven to maximize 'economy, consistency, and

27 comity.'" Id. (quoting Cadle Co. v. Whataburger of Alice, Inc.,

28 174 F.3d 599, 604 (5th Cir. 1999)).

1    The first-to-file rule "is not a rigid or inflexible
2 rule to be mechanically applied, but rather is to be applied with
3 a view to the dictates of sound judicial administration."
4 Pacesetter Sys. Inc. v. Medtronic, Inc., 678 F.2d 93, 95 (9th
5 Cir. 1982).  "District court judges can, in the exercise of their
6 discretion, dispense with the first-filed principle for reasons
7 of equity."  Alltrade, Inc. v. Uniweld Prods., Inc., 946 F.2d
8 622, 628 (9th Cir. 1991).  "The circumstances under which an
9 exception to the first-to-file rule typically will be made
10 include bad faith, anticipatory suit, and forum shopping."  Id.
11 III. Discussion

12    It is undisputed that the Waggener case was filed prior
13 to the instant case.  (See Docket No. 11 at 3.)  The dispute here
14 is whether the parties and issues in both actions are
15 sufficiently similar to satisfy the first-to-file rule's
16 remaining factors.  (See id.)

17    A.    Similarity of Parties

18    The first-to-file rule does not require exact identity
19 of parties, "only substantial similarity."  See Kohn Law Group,
20 Inc. v. Auto Parts Mfg. Mississippi, Inc., 787 F.3d 1237, 1240.
21 In putative class actions, the classes are compared rather than
22 the named plaintiffs.  See Bates-Ferreira v. Swedish Match North
23 America, LLC, No. 2:24-cv-00987 TLN CKD, 2025 WL 950506, at *3
24 (E.D. Cal. Mar. 28, 2025) (citing Pedro v. Millenium Prods.,
25 Inc., No. 15-cv-05253 MMC, 2016 WL 3029681, at *3 (N.D. Cal. May
26 26, 2016)).  "[P]roposed classes in class action lawsuits are
27 substantially similar where both classes seek to represent at
28 least some of the same individuals."  Wallerstein v. Dole Fresh

4

1  Vegetables, Inc., 967 F. Supp. 2d 1289, 1296 (N.D. Cal. 2013).

2          The class in the Waggener complaint is comprised of

3  "[a]ll United States residents who purchased Mondelez Products

4  marked with the 'Cocoa Life' seal . . . '100% sustainable' . . .

5  or any other sustainability claims within the United States

6  during the four-year period" preceding the filing of the

7  complaint.  (Docket No. 9-8 ¶ 63.)  Plaintiff seeks to represent

8  "[a]ll persons who, while in the state of California and within

9  the applicable statute of limitations period, purchased one of

10 more of the [OREO products]."  (Compl. ¶ 50.)[1]

11         The classes here are substantially similar.  The

12 Waggener plaintiff seeks to represent a nationwide class of which

13 individuals in plaintiff's statewide class are members; the

14 former encompasses the latter.  Both classes assert claims on

15 behalf of consumers in the United States who purchased OREO

16 cookies in an overlapping timeframe.  The claims are asserted

17 against a parent company in one case, and its subsidiary in the

18 other.  Both classes clearly seek to represent at least some of

19 the same individuals, and plaintiff's choice to sue MII's

20 subsidiary instead of MII directly does not defeat substantial

21 similarity.  See Kohn, 787 F.3d at 1240 (finding the parties were

22 substantially similar even though the defendant in one case was

23 not a named party in the other case); see also Adoma v.

24 University of Phoenix, Inc., 711 F. Supp. 2d 1142, 1148 (E.D.

25 Cal. 2010) ("[T]he proposed classes for the collective actions

26 _____

27       [1]   Although there are are references to consumer reliance
   in both plaintiff's complaint in this action and the Waggener
28 complaint (See Compl. ¶ 9; Waggener Compl. ¶ 61.), reliance is
   not part of either cases' class definitions.

1 | are substantially similar in that both classes seek to represent
2 | at least some of the same individuals.").

3 |     B.   <u>Similarity of Issues</u>

4 |     As with parties, "the issues in two actions need not be
5 | identical . . . only 'substantially similar.'" <u>Id.</u> (citing
6 | <u>Inherent.com v. Martindale-Hubbell</u>, 420 F. Supp. 2d 1093, 1097
7 | (N.D. Cal. 2006)). "When analyzing whether issues are
8 | substantially similar, a court considers if the common facts,
9 | taken together, would lead to the same central question between
10 | the cases." <u>Bates-Ferreira</u>, 2025 WL 950506, at *4 (citing <u>Adoma</u>,
11 | 711 F. Supp. 2d at 1148).

12 |     Plaintiff contends the issues between the cases are
13 | distinct because the <u>Waggener</u> complaint "challenges the alleged
14 | unsustainability of Defendant's cocoa sourcing," whereas
15 | plaintiff in this case is not concerned with sustainability, only
16 | whether defendant's cocoa is sourced entirely from the Cocoa Life
17 | program. (Docket No. 11 at 4.)

18 |     As a preliminary matter, this denial of any interest in
19 | sustainability in this case is belied by plaintiff's complaint,
20 | in which variations of the term "sustainable" are used forty-five
21 | times, often to describe the Cocoa Life program or to
22 | characterize consumer deception. (<u>See</u> Compl. ¶¶ 4-7, 9, 17, 27,
23 | 30, 34, 36, 38, 67.) The complaint also accuses defendant of
24 | "'greenwashing,' deceptively marketing a product as having a
25 | sustainable composition it does not possess," again indicating a
26 | concern with ethical production rather than strictly product
27 | composition. (<u>Id.</u> ¶ 34.) The issue of sustainability permeates
28 | plaintiff's complaint in this case, suggesting the sort of

6

1  "substantial overlap" of factual issues to support a finding of

2  substantial similarity.[2]  See Kohn, 787 F.3d at 1247.

3         But the decisive problem for plaintiff is that his case

4  shares a central question with Waggener: both parties want to

5  know how MII sources its cocoa.  To that end, both actions bring

6  claims for violations of the California Consumers Legal Remedies

7  Act, California Unfair Competition Law, and unjust enrichment.

8  (See Docket No. 9 at 9.)  Regardless of the underlying motives

9  for these claims, litigating them will undoubtedly involve

10  similar discovery, similar witnesses, and similar motion practice

11  to determine what is ultimately critical to their determinations:

12  whether MII's "100% Sustainably Sourced Cocoa" label is

13  deceptive.  A fabricated difference in the reasons for asking

14  that question does not undermine the fundamental similarity in

15  the methods for answering it.

16         At oral argument plaintiff emphatically cited Hernandez

17  v. Event Tickets Ctr., Inc. for the proposition that two cases

18  with differing deceptions cannot be substantially similar.  No.

19  2:24-cv-01983 DAD AC, 2025 WL 1067714, at *3 (E.D. Cal. Apr. 9,

20  2025).  But the deceptions in Hernandez were substantively

21  distinct, as the cases involved an omission regarding pricing on

22  the one hand, and affirmative misrepresentations regarding venue

23

24         [2]    It is worth noting that the plaintiff in Waggener

25  submitted an opposition to defendant's motion to dismiss in which
   she alleged "Mondelez does not claim, nor can it plausibly

26  suggest, that cocoa harvested with child labor is segregated from
   other inputs."  (Docket No. 13-2 at 16.)  This language targets

27  MII's supply chain, rather than sustainability more generally,
   and aligns the Waggener case even more closely with plaintiff's

28  case here.

7

1   and inventory on the other.  Id.  The language, subject matter,

2   and aim of the alleged deceptions differed.  Id.  That is not the

3   case here: these actions focus on the same language, written on

4   the same label, invoking the same subject matter, and promoting

5   the same product.

6          This action is not the first-filed action and the

7   parties and the issues in plaintiff's case are substantially

8   similar to those in the Waggener case.  Accordingly, the first-

9   to-file rule applies.

10  IV.  Staying or Transferring the Action

11         Defendant's first-to-file analysis underlies their

12  request for a stay.  However, they go on to state in the

13  alternative that "even if the court were not inclined to stay or

14  dismiss this case under the 'first-to-file' rule, it should

15  transfer the case" pursuant to 28 U.S.C. § 1404(a).  (Docket No.

16  9 at 10.)

17         The first-to-file rule provides independent discretion

18  for transfer, and "§ 1404(a) cabin[s] the exercise of that

19  discretion" only in that the transferee venue must be proper.

20  See Bozic, 888 F.3d at 1054 (a district court relying solely on

21  first-to-file in transferring "could only transfer [the] action

22  to a district 'where it might have been brought'").  The other

23  factors of § 1404(a) may also be considered, but they are not

24  strictly required to justify transfer when first-to-file applies.

25  See Pacesetter Systems, Inc. v. Medtronic, Inc., 678 F.2d 93, 96

26  (9th Cir. 1982) ("In appropriate cases it would be relevant for

27  the court in the second-filed action to give consideration to the

28  convenience of the parties and witnesses.").

1    Plaintiff does not dispute this action "might have been
2    brought" in the Northern District of Illinois, nor could he;
3    defendant is headquartered there, and personal jurisdiction and
4    venue are "unquestionably proper." (Docket No. 9 at 11.)

5    The other class actions have already been consolidated
6    in Illinois, an interim class counsel has been appointed, and a
7    motion is currently pending there dealing with many of the same
8    issues presented by this case. (See Docket No. 11 at 4.) Merely
9    pausing plaintiff's action while Waggener proceeds in Illinois
10   would segregate the parallel cases, creating a likelihood of
11   duplicative, cross-country litigation. As Judge Martínez-Olguín
12   noted in her order transferring the original Waggener action, the
13   Northern District of Illinois is also the case's "'center of
14   gravity' -- where the key witnesses and documents are located,"
15   so transfer promises an "overall reduction of litigation costs."
16   van Meter v. Mondelez International, Inc., No. 24-cv-00564 AMO,
17   2025 WL 875391, at *3 (N.D. Cal. Mar. 18, 2025).

18   Based on the foregoing, the first-to-file factors weigh
19   in favor of transfer to the Northern District of Illinois, where
20   venue is proper and where the likelihood of consolidation
21   supports judicial economy. Accordingly, the case will be
22   transferred to that district.

23   IT IS THEREFORE ORDERED that defendant's motion to
24   transfer venue (Docket No. 9) be, and the same hereby, is
25   GRANTED. This action is hereby TRANSFERRED to the Northern
26   District of Illinois for all further proceedings. The Clerk of
27
28

1    this court is instructed to close this case after transfer is

2    complete.³

3    Dated:   September 4, 2025

     WILLIAM B. SHUBB
4                                        UNITED STATES DISTRICT JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    _____

         ³       Transfer being granted, defendant's motion to stay is
28    DENIED as moot.

                                      10